Eugene W. CONNELLY

v.

**WOLF, BLOCK, SCHORR AND SOLIS–COHEN.**

Civ. A. No. 78–2175.

United States District Court, E. D. Pennsylvania.

Dec. 20, 1978.

---

Eugene W. Connelly, pro. per.

George P. Williams, III, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

This diversity action was filed by plaintiff Eugene W. Connelly ("Connelly") against Wolf, Block, Schorr and Solis-Cohen ("Wolf, Block") for alleged legal malpractice arising from Wolf, Block's participation in a suit between American East India Corporation ("American") and Ideal Shoe Company ("Ideal"). The factual background of that case is detailed in the reported decision, *American East India Corp. v. Ideal Shoe Co.*, 400 F.Supp. 141 (E.D.Pa. 1975), aff'd, 568 F.2d 768 (3d Cir. 1978). Wolf, Block represented American in that action. At the time that suit was filed, and up until December 31, 1974, Connelly was president of American, a corporation owned by Indian interests. In his capacity as president, Connelly was American's liaison with its counsel. In addition to Wolf, Block, the New York law firm of Chadbourne, Parke, Whiteside and Wolff ("Chadbourne") represented American. Chadbourne was also American's counsel in two suits in the New York state courts. In one of those suits Commercial Trading Company ("Commercial") sought declaratory and injunctive relief against American; in the other, American sought damages against Commercial. All three suits involved a dispute as to whether American was entitled to payments for the importation of certain footwear. The crux of the Philadelphia action was that "Plaintiff, American East India Corporation (American), delivered goods to the defendant, Ideal Shoe Company (Ideal), and defendant paid the monies due, minus a deduction for estimated damaged and/or inferior goods, to a third party factor, Commercial Trading Corporation (Commercial)." *American East India Corp. v. Ideal Shoe Co., supra* at 146.

In its complaint in the Philadelphia action, American sought damages of $27,-542.40. The case was tried during May and June, 1973. Trial briefs and requested findings of fact were submitted in July of the same year. On July 16, 1975, the case was decided, and American was awarded $19,-631.36, plus interest. Between the time of trial and the decision in the case, however, several significant events occurred that affect this case.

In October, 1974, Connelly made arrangements with American for his retirement. It was agreed that Connelly would retire effective December 31, 1974, and that the Philadelphia action and the two New York cases would be assigned to Employment Counsellors, Inc., a New York corporation wholly owned by Connelly. The assignments were effective as of October, 1974.[1]

Both before and after the assignments, Connelly expressed his dissatisfaction with certain aspects of Wolf, Block's handling of the trial and requested that certain information be put before the trial judge before a decision was rendered.

After the decision in the Philadelphia case was handed down, and American had been awarded $19,631.36 of the $27,542.40 that it had sought, Wolf, Block filed with the court a "Motion to Amend the Court's Findings of Fact, to Make Additional Findings of Fact, for a New Trial to the Extent Necessary to Make such Findings, to Amend Conclusions of Law and to Amend the Judgment." The motion was supported by an affidavit by Connelly that was submitted after the motion was filed. On August 1, 1975, the motion was denied. Connelly Supplemental Affidavit, Exhibit D.

Connelly asserts, as the basis for his malpractice claim, that Wolf, Block was not aware of the applicable law in the Philadelphia action; that it failed to bring the correct law to the judge's attention after being alerted to it by plaintiff; that it failed to use evidence of Commercial's fraud and deceit that he provided; that this malpractice continued from the time of trial

---

1. The lawsuits were subsequently assigned from Employment Counsellors to Connelly individually. Complaint ¶ 27; Transcript of oral argument at 35, 37.

until the decision was announced; and, that Wolf, Block failed to advise him in a timely fashion of the provisions of Federal Rule of Civil Procedure 59.

Defendant Wolf, Block has now moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. In support of its motion defendant contends that Connelly does not have standing to bring this action; that the claim, if any, belongs to American; that the claim was never assigned to Connelly; and that Connelly is collaterally estopped from asserting that a malpractice claim was assigned to him by virtue of the decision in *Connelly v. Chadbourne, Parke, Whiteside & Wolff,* Index No. 15995/77 (S.Ct.N.Y.Cty., N.Y., Sept. 14, 1977).

Rule 56(b) provides that "[a] party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof." Rule 56(e) provides further that

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Plaintiff has filed two affidavits in opposition to defendant's motion for a summary judgment. We must determine, therefore, whether defendant has met its burden of showing the absence of any genuine issue as to all material facts and whether it is entitled to judgment as a matter of law. 6 Moore's Federal Practice ¶ 56.15[3] (2d ed. 1976). Under proper circumstances, summary judgment can be granted on the basis of collateral estoppel. *Scooper Dooper, Inc. v. Kraftco Corp.,* 494 F.2d 840 (3d Cir. 1974).

**Collateral Estoppel**

Defendant bases its collateral estoppel argument on the decision of the New York Supreme Court, New York County, in *Connelly v. Chadbourne, Parke, Whiteside & Wolff,* Index No. 15995/77 (Sept. 14, 1977). Connelly sued defendant in that case for malpractice in Chadbourne's representation of American between 1968 and June 1974 in the two New York actions and the Philadelphia action discussed *supra.* Connelly based his right to bring the malpractice suit on the same assignments that are at issue in this case. The court noted that any malpractice occurred, if at all, prior to the October 1974 assignments, for the simple reason that Chadbourne had ceased to represent American before the assignment. The court's decision on Chadbourne's motion to dismiss therefore turned on the question whether the assignments of the suits by American included an assignment of any malpractice claim. The court held that "[t]he assignment in question clearly assigns only the three existing actions. Any claim for malpractice belongs to [American]." *Connelly v. Chadbourne, Parke, Whiteside & Wolff, supra,* slip op. at 3.

To determine the effect of this decision on the instant action, we are required in this diversity action to look to the law of Pennsylvania to determine the applicable law of collateral estoppel. Comment g, § 95 of the Restatement of the Law, Conflicts of Law 2d, provides that

The local law of the State where the judgment was rendered will be consulted to determine whether the parties should be precluded in a subsequent action upon a different cause of action from relitigating issues that were essential to the judgment and were actually litigated and determined by the judgment.

If Pennsylvania were to follow that section, it would therefore turn to New York's law on collateral estoppel. Regardless of whether Pennsylvania were to apply New York or Pennsylvania law, however, the result would be the same in this case. The law of the two states is functionally equiva-

lent in this instance. In both states the requirement of mutuality of estoppel has been abandoned. *See DeWitt v. Hall*, 19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195 (1967); *Safeguard Mutual Insurance Co. v. Williams*, 463 Pa. 567, 345 A.2d 664 (1975). For a plea of collateral estoppel to be valid under Pennsylvania law, it is necessary that

> 1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Safeguard Mutual Insurance Co. v. Williams, supra*, 463 Pa. at 574, 345 A.2d at 668. For all purposes relevant to this motion, New York law is in agreement. *See Schwartz v. Public Administrator*, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969).

■ The requirements for the application of collateral estoppel are met in this case: the New York court squarely decided that the assignment included no claim for malpractice arising before the date of the assignment;[2] a final judgment was rendered on the merits;[3] Connelly was a party in the New York action upon which estoppel is based; Connelly had a full and fair opportunity to litigate the issue in the prior action.[4] We therefore agree with defendant that Connelly is estopped from asserting malpractice claims arising before the October 1974 assignments. The New York action determined that those claims were not assigned to Connelly. We agree with plaintiff, however, that this alone is an insufficient basis for granting defendant's motion for summary judgment. For in this case, unlike the New York action, the involvement of the defendant law firm continued after the assignments by American. We must therefore consider whether, for the period of time following the October, 1974 assignments, there is a genuine issue as to any material fact. Specifically, the existence or non-existence of an attorney-client relationship is a material fact in this case.

## Attorney-Client Relationship

■ In order for a plaintiff to recover against a defendant law firm in a legal malpractice case, it is generally essential that an attorney-client relationship have existed between the parties. *See* Belden, Belden & Lappas, *Professional Liability of Lawyers in Pennsylvania*, 10 Duquesne L.Rev. 317, 333–40 (1972). Clearly, if Wolf, Block could establish that it owed no duty to defendant, it would be entitled to sum-

---

**2.** Although the New York court considered specifically assignment of claims against Chadbourne, the issue decided was that the assignment assigned no malpractice claims. There is no language in the assignment that provides any basis for distinguishing between assignment of claims against Chadbourne and Wolf, Block. In view of the fact that the action against Chadbourne included an allegation of malpractice in the Philadelphia action in which Wolf, Block was involved, we believe that the issue decided was identical as to any malpractice arising before the assignment.

**3.** Absent a statute to the contrary, a pending appeal does not destroy the finality of a judgment for purposes of collateral estoppel. Restatement of the Law, Judgments § 41, comment d; § 69, comment e. It has been held that the finality of a judgment in New York, CPLR § 5011, 7B McKinney's, is not affected by the pendency of an appeal. *Clougherty v. Royal*

Insurance Co., 102 R.I. 636, 232 A.2d 610 (1967); *In re Bailey*, 265 App.Div. 758, 40 N.Y. S.2d 746, *aff'd*, 291 N.Y. 534, 50 N.E.2d 653 (1943).

**4.** New York places the burden of showing the unavailability of a full and fair opportunity to litigate the issue on the party opposing collateral estoppel. *Schwartz v. Public Administrator*, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969). Connelly has presented no reasons for assuming the opportunity was not both full and fair. Consideration of the indicia suggested by *Schwartz, supra*, leads to the conclusion that the opportunity was adequate: Connelly's claim in the prior action was sizeable; he brought the action; it was brought in his own state. In regard to the assertion of collateral estoppel for malpractice claims arising before the assignments, there is no issue as to any material fact.

mary judgment. Wolf, Block has contended that it at no time represented Connelly or his corporation, Employment Counsellors. In its affidavits, defendant tries to establish that it did not learn of the assignments to Connelly until June 27, 1975, and that when it learned of the assignments, it informed American and Connelly that it would not represent Connelly. Joseph Supplemental Affidavit ¶¶ 2–4. Faced with these affidavits, Connelly is required, in order to avoid entry of summary judgment against him, to show that there is a genuine issue as to whether a duty was owed to him. Plaintiff's response has not been entirely free of ambiguity. Connelly's statements at oral argument in response to the question whether an attorney-client relationship ever existed between Wolf, Block and himself or Wolf, Block and Employment Counsellors were somewhat contradictory.[5]

■ Pennsylvania courts have often stressed the consensual nature of the attorney-client relationship. For example, in the context of considering a motion to disqualify an attorney, the Court of Common Pleas of Lehigh County observed:

> Although the relationship of attorney and client may be implied from the conduct of the parties, such conduct must evidence an offer or request by the client for legal services and an acceptance of the offer by the attorney: *E. F. Hutton & Co. v. Brown*, 305 F.Supp. 371, 388 (S.D.Texas, 1969); 7 C.J.S., Attorney and Client, §§ 61–62, 65. It is clear that an attorney-client relationship exists only with the consent of both parties. As noted in *Felix's Estate*, 52 [Pa.] D. & C. 37 (O.C. Allegheny 1945), such relationship is "personal, reciprocal, and confidential" and "[i]t must be entered into freely, fairly and advisedly by the attorney and client." See also *Young v. Scarazzo*, 30 [Pa.] D. & C.2d 324, 334 (C.P. Lawrence 1963); 3 P.L.Encyc., Attorneys, § 32.

*Pennsylvania Power & Light Co. v. Gulf Oil Corp.*, 74 Pa.D. & C.2d 431, 437 (C.P. Lehigh Cty.1975). It is not always readily apparent, however, whether an attorney-client relationship came into existence. *See La-*

*wall v. Groman*, 180 Pa. 532, 37 A. 98 (1897). This is particularly true since an attorney-client relationship can, under certain circumstances, be implied from the conduct of the parties. *See Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978); *Committee on Professional Ethics & Grievances v. Johnson*, 447 F.2d 169, 174 (3d Cir. 1971); *Pennsylvania Power & Light Co. v. Gulf Oil Corp., supra.*

■ In ruling on a motion for summary judgment, we are required to draw all inferences in favor of the non-moving party. *Harold Friedman, Inc. v. Thorofare Markets, Inc.*, 587 F.2d 127, 131 (3d Cir. 1978); *Scott v. Plante*, 532 F.2d 939 (3d Cir. 1976). Based on the fact that Wolf, Block filed papers with the trial court in the *American East India* case after it was admittedly aware of the assignments, we believe that it is not possible to hold as a matter of law that an attorney-client relationship could not be implied. This conclusion is reinforced by Connelly's averments of fee demands, Connelly supplemental affidavit at 6, and by his averments that Wolf, Block was aware of the assignments, Connelly affidavit at 2–3, and that it performed legal services with knowledge of the assignments, Connelly supplemental affidavit at 10. The existence of an attorney-client relationship, or some other basis of establishing a duty of Wolf, Block's part, is clearly a material fact in this case. Drawing all inferences in plaintiff's favor, as we are required to do in ruling on this motion, we cannot say that Wolf, Block has met its burden of establishing that there is no genuine issue as to that fact. Defendant's motion for summary judgment therefore will not be granted.

Issues Remaining for Trial

■ The Federal Rules of Civil Procedure do not provide for partial summary judgment for a portion of a single claim. *Coffman v. Federal Laboratories, Inc.*, 171 F.2d 94 (3d Cir. 1948), cert. denied, 336 U.S. 913, 69 S.Ct. 603, 93 L.Ed. 1076 (1949); *Biggins v. Oltmer Iron Works*, 154 F.2d 214 (7th Cir. 1946). Nonetheless, Rule 56(d)

---

**5.** Compare transcript of oral argument at 43, 44, and 47 with transcript at 51.

920

imposes a duty on a court that does not fully adjudicate a case on a motion for summary judgment to make an order formulating the issues for trial, to the extent practicable. *Associated Hardware Supply Co. v. Big Wheel Distributing Co.,* 355 F.2d 114 (3d Cir. 1965); 6 Moore's Federal Practice ¶ 56.20[3.–3] (2d ed. 1976). In view of our discussion of collateral estoppel, supra, we therefore hold that at trial plaintiff may not assert that the October, 1974 assignments assigned to him malpractice claims for any malpractice occurring before the assignments. To recover, plaintiff must show a duty owed to him and malpractice occurring after the assignments.

Pursuant to Local Rule of Civil Procedure 49, this case shall be referred to arbitration. The issues involved in this case, both legal and factual, are complex. We therefore believe that if this case returns to us after arbitration, it would be appropriate, particularly in view of the fact that no jury demand was made, Fed.R.Civ.P. 38, to order a separate trial on the issue of the existence of an attorney-client relationship or some other basis of a duty owed plaintiff by Wolf, Block. Fed.R.Civ.P. 42(b). If plaintiff meets his burden on this issue, the issues of negligence and causation must then, of course, be addressed.